61 N.J. Super. 396 (1960)
161 A.2d 111
CHARLES LANDY AND HELEN KLINE, PLAINTIFFS-RESPONDENTS,
v.
BELLMAWR SEWERAGE AUTHORITY, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1960.
Decided May 20, 1960.
*397 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. W. Louis Bossle argued the cause for defendant-appellant (Mr. Carl H. Auerbach, attorney).
Respondents did not file a brief or argue.
PER CURIAM.
Defendant, Bellmawr Sewerage Authority, of the Borough of Bellmawr, Camden County, appeals from *398 a judgment of the Chancery Division declaring that the sewer rates established by it are not fair, just, uniform and equitable in accordance with N.J.S.A. 40:14A-8, and ordering it to proceed forthwith to reschedule rates in conformity with the statute.
The stipulated facts are reported in the opinion of the trial judge, Kline v. Bellmawr Sewerage Authority, 55 N.J. Super. 153 (Ch. Div. 1959), and we shall not repeat them here. Briefly stated, the controversy arises over the fact that one section of the municipality, District One, was connected to a primary treatment plant by existing sewer lines, the cost of which had been in large part borne, directly or indirectly, by the purchasers of homes in that section. The remaining area of the municipality, District Two, was unsewered, but since the soil was unsuitable for cesspools, the governing body decided to extend sewer lines into the section and to convert the treatment plant into a secondary treatment plant. The cost of changing the plant was $340,000 and of extending the sewer lines $1,360,000. It was decided that the work should be done through, and the entire system operated by, the defendant sewerage authority, which was then created pursuant to N.J.S.A. 40:14A-4.
Defendant obtained the money for the project through a bond issue. The bonds are payable in full at the end of 40 years, and the funds must be raised from the rates and service charges authorized in the statute. The authority is required to be a self-liquidating entity under the Sewerage Authorities Law, N.J.S.A. 40:14A-1 et seq.
On the theory that "one man should not be required to pay for another's benefit," the authority proposed a service charge of $40 in the sewered area and $66 in the previously-unsewered area. Plaintiff, a taxpayer of the borough residing in District Two, challenged the proposed schedule as not possessed of uniformity and, for that reason, improper under section 8(b) of the statute. The question is whether the defendant correctly exercised its discretion in applying to the relatively new Sewerage Authorities Law the philosophy *399 of local assessments or whether all users of the system, the old as well as the new, must pay for the new improvements regardless of individual benefit. In that regard, it should preliminarily be noted that the theory of local assessments remains perfectly valid in municipalities that have not formed a sewerage authority. N.J.S.A. 40:56-1, subd. i; R.S. 40:56-27 and 52. See also R.S. 40:63-7 and 38.
In contrast with the statutes just cited, the power of the defendant to fix rates and service charges is set forth in section 8 of the Sewerage Authorities Law and particularly in subsection (b) thereof, providing as follows:
"Such rents, rates, fees and charges, being in the nature of use or service charges, shall as nearly as the sewerage authority shall deem practicable and equitable be uniform throughout the district for the same type, class and amount of use or service of the sewerage system, and may be based or computed either on the consumption of water on or in connection with the real property, making due allowance for commercial use of water, or on the number and kind of water outlets on or in connection with the real property, or on the number and kind of plumbing or sewerage fixtures or facilities on or in connection with the real property, or on the number of persons residing or working on or otherwise connected or identified with the real property, or on the capacity of the improvements on or connected with the real property, or on any other factors determining the type, class and amount of use or service of the sewerage system, or on any combination of any such factors, and may give weight to the characteristics of the sewage and other wastes and any other special matter affecting the cost of treatment and disposal thereof, including chlorine demand, biochemical oxygen demand, concentration of solids and chemical composition." (Emphasis supplied)
We are in agreement with the holding of the Chancery Division that rate classification according to the user's location in the community, although perhaps equitable in view of previous contributions to the system and of benefits actually received from its extension, was beyond the statutory power of the authority to prescribe. We are also in substantial accord with the reasoning expressed in Judge Schalick's opinion. The clear import of the statute is that the rates and fees are "in the nature of use or service charges." The determination of rates is to be made with *400 relation to the factors expressly stated in the statute, all of which pertain to the amount or characteristics of the sewage treated and disposed of in the system. And the rates "for the same type, class and amount of use or service" shall be uniform "as nearly as the sewerage authority shall deem practicable and equitable."
Defendant argues that the "practicable and equitable" qualification confers upon it the authority to levy charges based on considerations not stated in the section, and that the Legislature intended equitable and not strict uniformity. In our opinion, however, the phrase, considered in the context of the section as a whole, does not bespeak an intention to infuse the concept of special assessments into this legislation. The unmistakable direction here is to classify according to the use to be made of the system, and equitable considerations permit discretion only to the extent that a question of use or service is presented. There is no room for discrimination on the basis of what sections of the community will benefit from the installation of necessary physical properties. When the Legislature deemed the cost of installation to be an appropriate factor in the fixing of rates, as in the Municipal Utilities Authorities Law, it so provided. See N.J.S.A. 40:14B-22. Even then the cost of extension is a factor in the setting of rates only for service "outside the district." Within the district, and here within the municipality, the rates must be uniform for the same use.
The gravamen of the appeal, however, is not that the court failed to interpret the words and phrases of section 8(b) in the light of their most natural and accepted meaning, but that the section was not construed "prospectively" or consistently with the provisions of the legislation that follow, particularly those pertaining to the authority's relationship with its bondholders. It is urged that an insistence on uniformity of rates without regard to benefits conferred will result in a financial illogic. The argument is that the defendant is given the power in section 16 to secure, by the pledge of its rents and revenues, the payment of bonds issued *401 in connection with future constructions and acquisitions; that a future bond issue will undoubtedly be for an amount different from the present bond issue; and that the revenues pledged to secure the payment of each series of bonds will therefore be of unequal amounts. From this it is argued that the Legislature must have contemplated that the revenues derived from any particular new construction or acquisition would be related to the cost thereof, reflected by the size of the bond issue. If uniformity is necessary, defendant maintains that the cost of the new installation will be spread among all users, with the result that those users peculiarly benefited by the latest improvement will be paying reduced rates, which will obviously not be enough in the aggregate for the authority to secure "their" bond issue. And it is feared that the authority will not be able to pledge the revenues from users not benefited by this improvement because their rents will very likely have been pledged to secure an earlier bond issue.
The strength of this argument is diluted to some extent by the fact that section 16(5) and (9) permits the defendant to secure the payment of any one bond issue by the pledge not only of revenues derived from that part of the system to be constructed but also of those derived from parts "theretofore constructed." This is legislative recognition that if additional capital is needed for an extension, the rates of the "old" users may have to be increased. Those rates presumably will have been pledged only to the extent of the former charges. Moreover, if the revenues to be derived from the new construction will not be sufficient to secure the cost thereof, the defendant is permitted to pledge any "other moneys" it may have. N.J.S.A. 40:14A-16(5), (6), (7). We add that the statute does not require the amount of the security or pledge to be equal to the liability incurred; this is a matter for adjustment with the bondholders.
In any event, we are confident that the Legislature did not intend to give content in the fashion suggested to the *402 phrase "as nearly as the sewerage authority shall deem practicable and equitable." Section 8(b) is concerned with use and service charges to the individual consumer. Section 16, on the other hand, has reference to the system revenues in the aggregate. The most the defendant has shown is that there may be separate bookkeeping of the collective revenues derived from each extension of the system; but this does not justify a discrimination in rates at the users' level in contravention of the uniformity prescribed.
The judgment is affirmed.