HOME BUILDERS LEAGUE OF SOUTH JERSEY, INCORPORATED, A NEW JERSEY NON-PROFIT CORPORATION, GREENTREE VILLAGE, INC., A NEW JERSEY CORPORATION, MAX ODLEN, AN INDIVIDUAL, U. S. HOME—PAPARONE DIVISION, A DELAWARE CORPORATION QUALIFIED TO DO BUSINESS IN NEW JERSEY, STARNELL COMPANY, A NEW JERSEY LIMITED PARTNERSHIP, ORLEANS BUILDERS AND DEVELOPERS, A PENNSYLVANIA LIMITED PARTNERSHIP QUALIFIED TO DO BUSINESS IN NEW JERSEY, KIHADE BUILDERS, INC., A NEW JERSEY CORPORATION, AND JOE BRICKETTO, INC., A NEW JERSEY CORPORATION, PLAINTIFFS, v. TOWNSHIP OF EVESHAM, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, EDGAR MACY, EVESHAM TOWNSHIP CONSTRUCTION OFFICIAL, AND CHARLES P. BALCZUN, TOWNSHIP MANAGER, DEFENDANTS.

Superior Court of New Jersey
Law Division—Burlington County

Decided April 25, 1980.

*Robert M. Washburn* for plaintiffs.

*William S. Ruggierio* for defendants (*Ruggierio* and *Freeman*, attorneys).

GOTTLIEB, J. J. D. R. C. (temporarily assigned).

This action questions the validity of two municipal ordinances which, in relevant part, require that an applicant for a construction permit or a certificate of occupancy show that all real estate taxes on the property for which the permit or certificate is sought are current before the permit or certificate will be issued.

In April 1977 defendant township enacted Ordinance 11-4 77, which requires that (a) an applicant for development under the Municipal Land Use Law submit proof that no real estate taxes or assessments for local improvements are due before the application will be considered, see *N.J.S.A.* 40:55D 39(e); (b) an applicant for a construction permit under the State Uniform Construction Code Act submit proof that no taxes or assessments are due before the permit will be issued, and (c) an applicant for a certificate of occupancy under the act submit proof that no taxes or assessments are due before the certificate will be issued. Although the ordinance confined the require-

ment of proof of payment before a certificate of occupancy would be issued to commercial or general business uses, that requirement was expanded in November 1979 by the adoption of Ordinance 42-10-79, to include certificates covering residential uses.

Plaintiffs assert that those portions of the two ordinances which require proof of payment of taxes and assessments before a permit or certificate will be issued are invalid because *ultra vires*. Since they impose a requirement of an applicant in an area preempted by state legislation, they are violative of plaintiffs' equal protection rights, they are beyond the police power granted municipalities under *N.J.S.A.* 40:48-2, and they seek to obtain the collection of taxes by illegal means. Plaintiffs have moved for a summary judgment pursuant to *R.* 4:46.

Defendants oppose the summary judgment request, contending that the complaint was not filed within the 45-day time limit available under *R.* 4:69-6(a) and that there was a legitimate public concern existing to justify the enactment of the ordinances. They also deny that the ordinances act in an area preempted by the State.

Although it would be preferable to have the bar of the 45-day limitation of *R.* 4:69-6(a) affirmatively asserted by way of cross-motion for summary judgment, the court cannot overlook this contention and merely discuss the other issues in this case. The 45-day limitation must be addressed first since it may be that the limitation is dispositive of the case. Accordingly, the court shall, on its own motion, treat that contention, raised by defendants as an argument in opposition to the motion for summary judgment, as an issue affirmatively raised on motion and ripe for decision. Once the court is advised of the existence of this significant defense, it cannot be overlooked or avoided where the other party or parties move for summary judgment.

*R.* 4:69-6(a) limits an action in lieu of prerogative writs from being commenced more than 45 days after the accrual of

the right to the review, except as provided in paragraph (b) of that rule, which enumerates certain exceptions not here applicable. Although the court has not been supplied with definite dates of publication of final adoption of the two ordinances, which would establish a date upon which the right to review accrues, *Bruno v. Shrewsbury*, 2 *N.J.Super.* 550 (Law Div.1949), counsel have stipulated that these publications of final adoption were properly done, see *N.J.S.A.* 2A:82 13, and were accomplished within a few days after the formal vote on final adoption by the governing body. Since the complaint in this matter was filed on February 29, 1980, the complaint was clearly not within the 45-day period of limitation.

However, *R.* 4:69--6(c) authorizes the court to enlarge this time period "where it is manifest that the interest of justice so requires." Although it is clear that "exceptions to the time limitations imposed upon the in-lieu procedure should be but exceptionally condoned, and only in the most persuasive circumstances," *Robbins v. Jersey City*, 23 *N.J.* 229, 238 (1957); *Kohler v. Barnes*, 123 *N.J.Super.* 69, 80 (Law Div.1973), these exceptional circumstances exist here. Not only is there a substantial constitutional question alleged, *see Brunetti v. New Milford*, 68 *N.J.* 576, 585–587 (1975), but, as time goes on, if no restraint of the ordinance requirements is imposed, it could cause continuing harm to plaintiffs and others similarly situated. *See East Rutherford Industrial Park v. State*, 119 *N.J.Super.* 352, 360 (Law Div.1972). In addition, because of significant public interests involved, the "interests of justice" are served by allowing an enlargement of time. Surely the question of the requirements to be satisfied before an applicant can obtain a construction permit or a certificate of occupancy is as momentous to the public interest as a judicial review of the legality of public building specifications, *see Kotter v. East Brunswick*, 160 *N.J. Super.* 462, 470 (App.Div.1978), or of service charges to be paid to a municipal utilities authority, *see Reahl v. Randolph Tp. Mun. Util. Auth.*, 163 *N.J.Super.* 501, 510 (App.Div.1978), or of

whether municipal officials had been overpaid, *Bernstein v. Krom*, 111 *N.J.Super.* 559, 564 (App.Div.1970). Accordingly, the court will not bar plaintiffs' action because not brought within the 45-day period, and will consider the other issues raised.

The State Uniform Construction Code Act was enacted in 1975. The intent of the legislation is set forth in *N.J.S.A.* 52:27D–120 and is restated in *N.J.A.C.* 5:23 1.3. Without repeating verbatim the contents of that statute and regulation, the intent may, for the purposes of this case, be summarized as the elimination of construction regulations by local government units, the Legislature having decided that there should be a unitary construction code applicable throughout the State. As stated in *N.J. State Plumbing Inspectors Ass'n v. Sheehan*, 163 *N.J.Super.* 398 (App.Div.1978):

> We are dealing with a broad, remedial piece of legislation, the basic purpose of which is to establish and provide for uniform building and construction standards and uniform enforcement policies and practices throughout the entire State. After many years of local control by literally hundreds of municipalities, with varying construction regulations and enforcement policies, the need for the uniformity provided by the act is indeed self-evident. [at 401]

Further, as expressly noted in paragraph f of the statute, the Legislature intended to "eliminate unnecessary duplication of effort and fees in the review of construction plans and the inspection of construction." Plaintiffs argue that the two ordinances under review clash with that policy.

Those areas in which the Legislature acts are preempted from further activity by a local governmental unit. *Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Ed.*, 79 *N.J.* 574, 586 (1979). The Supreme Court in *Fair Lawn* went on to stress that "[i]n deciding whether a particular municipal activity has been preempted, the Court must determine whether the Legislature intended its action to preclude the exercise of local authority," and "[i]n assessing the legislative intent, the primary factor to be considered is whether the municipal action adversely affects the legislative scheme." *Id.* at 586.

The State Uniform Construction Code Act itself provides significant aid to the court in making this determination. For example, *N.J.S.A.* 52:27D ·130 requires that a construction permit be applied for and obtained before the occurrence of any construction or alteration. The application is to be "in accordance with regulations established by the commissioner [of Community Affairs] and on a form prescribed by the commissioner . . . ." *N.J.S.A.* 52:27D 131 indicates that "[i]f the application conforms with this act, the code, *and the requirements of other applicable laws and ordinances*, the enforcing agency shall approve the application and shall issue a construction permit to the applicant." (Emphasis supplied).

Additionally, *N.J.S.A.* 52:27D · 133 discusses certificates of occupancy and mandates that "[a] certificate of occupancy shall be issued by the enforcing agency when all of the work covered by a construction permit shall have been completed in accordance with the permit, the code *and other applicable laws and ordinances.*" (Emphasis supplied).

Those portions of statutes which have been emphasized, as well as stressed portions of administrative rules which follow, are being highlighted in recognition of the thrust of one of defendants' basic arguments that there is no practical, realistic conflict between the statutes and rules and the two subject ordinances.

■ It is, of course, appropriate to refer to the administrative rules adopted in implementation of the statute in order to determine whether the ordinances conflict with the legislative scheme. *Cf. Malone v. Fender*, 80 *N.J.* 129, 137 (1979).

The Commissioner of Community Affairs is expressly empowered, by *N.J.S.A.* 52:27D ·124, to adopt rules pertaining to the administration and implementation of the act. In fulfilling this assignment, the Commissioner has provided definitions of a "construction permit" and a "certificate of occupancy." *N.J. A.C.* 5:23–1.4. A "construction permit" is "an authorization to

begin work subject to the conditions established [in the subchapter of the rules regulating administration and enforcement]," while a "certificate of occupancy" is defined as "the certificate provided for [in the subchapter regulating administration and enforcement], indicating that the construction authorized by the construction permit has been completed in accordance with the construction permit, the act and the regulations."

*N.J.A.C.* 5:23–2.5(b) allows the local enforcing entity (in this case, the township construction official, who is defendant Macy) to develop an application form for a construction permit. When filled out, the application form must provide "a general description of the proposed work, its location, the use and occupancy of all parts of the building or structure and of all portions of the site or lot not covered by the building or structure, *and such additional information as may be required by the construction official, which shall include but not be limited to* " identification of the name and address of the owner, the street address and lot and block number of the property, a description of the proposed work, the estimated cost of that work, "[a] statement that *all required State, county and local prior approvals have been given, including such certification as the construction official may require,*" and, where known at that time, the names and addresses of the contractors and of the person who will oversee the work, such as an architect or an engineer. (Emphasis supplied).

*N.J.A.C.* 5:23 2.5(c)(10) conditions the issuance of a permit upon the payment of the fee established in the municipal ordinance developed in accordance with the standards enumerated in *N.J.A.C.* 5:23 4.8(b)(3), that the work will conform to the approved application, plans and specifications, that the permit not be viewed as authority to avoid any of the provisions of the regulations, and that the owner and the contractor will assist the enforcing agency in its inspection work.

The pertinent regulations concerning a certificate of occupancy are found in *N.J.A.C.* 5:23 2.7(a)(1) and (6). Subparagraph

(1) prohibits the occupancy of a building or structure unless a form of certificate of occupancy has been issued by the construction official. Further, this subparagraph requires the enforcing agency, upon application, to issue the certificate "when all requirements of the regulations have been met." Subparagraph (6) identifies the information to be supplied on the application for a certificate, which must include the owner's name and address, the location of the building or structure, if a change of use is contemplated, the current and proposed use, a statement by the person in charge of the work that it was completed in accordance with the construction permit, the approved plans and the regulations, the final cost of construction and a set of "as built" drawings if the construction deviates from the approved plans.

This somewhat detailed recitation of the requirements of certain statutes and rules is appropriate in order that it be readily perceived that the State has indeed preempted this area of regulation. The legislation and the rules patently evidence an intention to make uniform application procedures as well as construction standards and enforcement policies. The references in the statutes and rules to "other applicable laws and ordinances" refer to standards adopted which may not be appropriate for coverage within the scope of the act. These, obviously, would include compliance with a zoning ordinance or an ordinance requiring connection to a water or sewer system. The phrase "other applicable laws and ordinances" does not refer to other requirements covered within the area of action or umbrella of the act or rules adopted by the Commission implementing the act.

Further, the detail of "the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation . . . ." *Garden State Farms v. Bay*, 77 *N.J.* 439, 450 (1978). To conclude otherwise would be to permit an adverse effect on the legislative scheme. The plan of the statutes is to provide a quality of constancy, no matter

where in this State one seeks to construct. At a public hearing before the Senate Labor, Industry and Professions Committee considering Senate Bill 1187 (1974), an almost identical version of Assembly Bill 1299 (1974) which was eventually adopted as the act, the following colloquy occurred.

> Senator Fay: This is more of an academic question: A few people have said to me, if a town or a city wants to have higher standards than the State Code, does this [legislation] preclude that?
>
> Mr. Merck: Yes, sir. And I think it is crucial. If each town can, in effect, introduce higher standards, there is no uniformity, therefore the benefits which would come through uniformity be lost . . . [Hearing of October 16, 1974, at 5]

To ‾now authorize municipalities to make distinctive their requirements pertaining directly to the area affected by the act would disrupt the policy of the legislation. Incursions of this nature are impermissible. Thus, the additional certification that may be required by the construction official under *N.J.A.C.* 5:23–2.5(b) pertains to information required to be presented to that official so that it might be determined that there is to be compliance with the codes, appearing on the face of the application.

■ It is not sufficient, as defendants contend, to rely upon Art. IV, § VII, par. 11 of our State Constitution, which requires that a liberal construction be afforded in favor of municipal power to act. As was recognized in *Wagner v. Newark*, 24 *N.J.* 467 (1957),

> Provisions for home rule have not given omnipotence to local governments . . . The broad grant of power under *R.S.* 40:48–2 . . . relates to matters of local concern which may be determined to be necessary and proper for the good of local inhabitants, and not to those matters involving state policy or in the realm of affairs of general public interest and applicability. [at 478]

The fact that there may be a public interest to be served, as contended by defendants, cannot save these ordinances. Assuming the efficacy of that assertion, that public interest is of a general nature not strictly appertaining to the residents of Evesham Township; the decision to act on that public interest is for the State, not the municipality.

Accordingly, it is determined that Ordinances 11 4 77 and 42–10–79 are invalid to the extent that they impose additional requirements for the issuance of a construction permit or certificate of occupancy. Because this result flows from the fact of state preemption, no decision is necessary as to whether the ordinances are invalid since they allegedly seek to obtain payment of real estate taxes through a means not countenanced in *Title* 54 of the *Revised Statutes* or that they deny plaintiffs their equal protection rights.

However, plaintiffs seek to have refunded to them all monies paid for certified tax searches required by the ordinances. Although the bar of the 45-day period under *R.* 4:69 6(a) has not been applied in this action, conceivably because of the age of the ordinances, they may be asserted an unreasonable delay in challenging the ordinances to the end that this portion of the request relief should not be afforded, under the doctrine of laches. Since this matter is presently being considered on plaintiffs' motion for summary judgment, and since the court cannot conclude that "there is no genuine issue as to any material fact challenged," the determination on this portion of the requested relief must await the trial.