NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS
Corrected 3/6/2024 – page 5, line 6 - refuge to refuse

-------------------------------------------------------x

FREDA, JOSEPH G. BY ACME AS
TENANT,

      Plaintiff,

      v.

CITY OF SEA ISLE CITY,

      Defendant.

-------------------------------------------------------x

TAX COURT OF NEW JERSEY
DOCKET NO: 006381-2023

Approved for Publication
In the New Jersey
Tax Court Reports

Decided:  March 5, 2024.

Pablo M. Kim for plaintiff (Heinze Law, PA).

Paul J. Baldini for defendant (Paul J. Baldini, PA).

CIMINO, J.T.C.

An unpaid municipal charge prevents a tax appeal from going forward. Municipal charge is a term of art defined by our Legislature. Since neither the non-residential development fee nor the planning board escrow fees constitute a municipal charge in this case, nonpayment cannot bar this tax appeal.

Defendant, City of Sea Isle City (the City), is on a barrier island adjoining the Atlantic Ocean in Cape May County.  The plaintiff, Acme, is a tenant of a property designated as Block 61.03, Lot 20.01 on the City's tax map.  Acme operates a new

-1-

supermarket on the site. Joseph G. Freda owns the parcel. The City issued a temporary certificate of occupancy to Freda in 2019. Freda still owes the City a non-residential development fee amounting to $117,154.50 and planning board escrow fees amounting to $16,162.64. The non-residential development fee funds low- and moderate-income housing. N.J.S.A. 40:55D-8.2. The escrow fees are for professional services incurred by a municipality in reviewing applications for development and for site inspections. N.J.S.A. 40:55D-53.1.

The City seeks dismissal of Acme's appeal since the fees have not been paid.[1] "A taxpayer who shall file an appeal from an assessment against him shall pay to the collector of the taxing district no less than the total of all taxes and municipal charges due . . . ." N.J.S.A. 54:3-27; L. 1991, c. 75, § 30. The City asserts the fees constitute municipal charges. Acme disagrees and asserts the appeal can go forward.

The City essentially urges this court to construe "municipal charge" as a generic term encompassing a broad array of municipal monetary impositions. However, "municipal charge" is a term of art used widely in the tax statutes. Chapters 4 and 5 of Title 54, the taxation title, contain a comprehensive scheme for the collection of local property impositions and mention "taxes, assessments and

---

[1]  Apparently, Acme is responsible for the payment of the property taxes. If paying the taxes, a tenant can file an appeal. See Prime Acct. Dep't v. Township of Carneys Point, 212 N.J. 493, 506-07 (2013).

other municipal charges" more than thirty times.[2]  See N.J.S.A. 54:4-67, -70, -99, -100, -101, -110, -114, -117, -119, -120; N.J.S.A. 54:5-21, -39, -45.1, -45.4, -46, -46.1, -53.1, -54, -111.1, -122.  These chapters were originally part of a series of laws on municipal finance reform enacted from 1916 through 1918 based upon the work of the Pierson Commission.[3]  L. 1918, c. 236, 237.  One of the original enactments from 1918, which later became Chapter 5, is entitled "[a]n Act concerning unpaid taxes, assessments and other municipal charges . . . ."  L. 1918, c. 237.  This enactment mentions "municipal charge" seven more times.  See L. 1918, c. 237, §§ 8, 17, 32, 33, 53, 62.  Two later adopted sections define "municipal charges" as "taxes, assessments and other municipal charges . . . ."  N.J.S.A. 54:4-110, -120; L. 1936, c. 268, § 4; L. 1937, c. 97, § 7.  From the foregoing, three types of municipal charges are discerned, namely, (1) taxes, (2) assessments, and (3) other municipal charges.

---

[2]  The statutes have slight variations including using "or" instead of "and"; the singular instead of the plural; and "assessments for benefits" instead of assessments.

[3]  The Pierson Commission formally known as the Commission for the Survey of Municipal Financing "reduced the incomprehensible clutter of preexisting laws to a few simple yet comprehensive statutes . . . ."  Edward L. Suffern, Municipal Accounting in New Jersey, 33 J. Acct. 321, 322 (1922).  The laws enacted covered local auditing, budgeting, bonding, accounting, taxation and tax sales.  See Arthur N. Pierson, Analysis of the Laws Affecting Municipal and County Finances and Taxation 6-7 (1918).  The work of the commission is still relevant.  In re Ordinance 2354-12 of the Twp. of W. Orange, 223 N.J. 589, 599-600 (2015) (discussing Pierson bond law).

The three types of municipal charges give rise to liens that can be satisfied through tax sale. For taxes, the lien is continuous. N.J.S.A. 54:5-6. For assessments, the lien generally arises after authorization of the improvements. N.J.S.A. 54:5-7. For other municipal charges, the lien attaches as specified by law. N.J.S.A. 54:5-8. Each year, the tax collector prepares a list of "all taxes, assessments and other municipal charges which were a lien at the close of the fiscal year." N.J.S.A. 54:5-21. The tax collector then conducts a tax sale to satisfy the liens. N.J.S.A. 54:5-31, -32. Whether a tax, assessment, or other municipal charge, the defining characteristic is a lien arises.

Municipal charges constituting "other municipal charges" can be found in Titles 40 and 40A concerning municipalities. The key to identifying an "other municipal charge" is whether a lien attaches to a governmental fee "on the respective date[] fixed by law." N.J.S.A. 54:5-8. The Legislature is adept at identifying when a lien attaches. The statutes specify over a dozen types of "charges" becoming "liens." See, e.g., N.J.S.A. 40:14A-21 (sewer); N.J.S.A. 40:14B-42 (water and sewer); N.J.S.A. 40:48-2.12f (abatement of nuisance); N.J.S.A. 40:48-2.14 (cleanup of lands); N.J.S.A. 40:48-2.27 (cutting brush and hedges); N.J.S.A. 40:48-2.47 (snow removal); N.J.S.A. 40:48I-1 (cannabis establishment taxes); N.J.S.A. 40:62-14 (light, heat and power); N.J.S.A. 40:64-8 (tree planting); N.J.S.A. 40:65-12 (removal of grass, weeds, snow and ice); N.J.S.A. 40:66A-18 (incinerator service);

N.J.S.A. 40A:26A-12 (sewer); N.J.S.A. 40A:26B-9 (stormwater); N.J.S.A. 40A:31-12 (water);

At times the Legislature does not explicitly use the term "charge," but still makes clear there is a lien against the property. See, e.g., N.J.S.A. 40:48-1(15) (removal of dangerous building, wall or structure); N.J.S.A. 40:48-1.1 (building demolition); N.J.S.A. 40:48-2.5 (repairs to dilapidated building); N.J.S.A. 40:48-2.59 (graffiti removal); N.J.S.A. 40:62-141 (water); N.J.S.A. 40:66-12 (street cleaning and disposal of refuse). Finally, in one instance, a lien is inferred when unpaid property registration fees are municipal charges that can lead to a sale. N.J.S.A. 40:48-2.12s3(d). The imposition of a lien is the common thread which differentiates "other municipal charges" from fees.

Previously, this court dealt with the issue of what constitutes a charge barring a tax appeal in Milltown Indus. Sites v. Borough of Milltown, 12 N.J. Tax 581 (Tax 1992), aff'd o.b., 15 N.J. Tax 144 (App. Div. 1993). The Milltown taxpayer owed the municipality for electric, water, and sewer service provided to the property. 12 N.J. Tax at 582. This court emphasized the statutes specify when unpaid utility charges became a lien subject to tax sale. Id. at 587-88. Likewise, the Tax Sale Law (Chapter 5 of Title 54) is read in pari materia with the provision barring an appeal for unpaid municipal charges. Id. at 588-89. Based upon the foregoing, the appeal was dismissed because the utility costs are municipal charges contemplated by the

statute.  Id. at 590.  Notably, Milltown dealt with statutes explicitly designating the unpaid utility costs as an unpaid "charge" to which a "lien" attached against the property.

The statute barring tax appeals uses the term "municipal charge."  N.J.S.A. 54:3-27.  The City cannot escape the well-worn usage of the term.  "Judges cannot substitute their own views for terms of art the Legislature has chosen."  In re Plan for Abolition of Council on Affordable Hous., 214 N.J. 444, 467-68 (2013).  "Where [the Legislature] employs a term of art 'obviously transplanted from another legal source, it brings the old soil with it.'"  George v. McDonough, 596 U.S. 740, 746 (2022) (quoting Taggart v. Lorenzen, 587 U.S. ____, 139 S. Ct. 1795, 1801 (2019)).  "The point of the old-soil principle is that 'when [the Legislature] employs a term of art,' that usage itself suffices to 'adopt the cluster of ideas that were attached to each borrowed word' in the absence of indication to the contrary."  George, 596 U.S. at 753 (quoting FAA v. Cooper, 566 U.S. 284, 292 (2012)).  The old soil defining "municipal charge" goes back to 1918.  Transplanted into the 1991 statute barring tax appeals is the term "municipal charge" along with the cluster of ideas attached to it.  See N.J.S.A. 54:3-27.  A municipal charge is not merely a fee or imposition of a municipality.  It is part of a statutorily specified class giving rise to a lien and eventual sale of the property.

The mechanics of the non-residential development fee illustrate that fees are not automatically considered municipal charges. The non-residential development fee "is imposed on all construction resulting in non-residential development . . . ." N.J.S.A. 40:55D-8.4(a). Certain properties, such as churches, are exempt from the fee. N.J.S.A. 40:55D-8.4(b). However, if the property ceases to be used for an exempt purpose within three years of completion, the "unpaid non-residential development fees . . . may be enforceable by the municipality as a lien against the real property of the owner." Ibid. So long as the property is used for an exempt purpose, it is just a fee. The loss of exempt status gives rise to a lien elevating the fee to the status of a municipal charge enforceable through sale of the property.

Absent statutory authorization creating a lien, the City cannot create a municipal charge out of thin air. The Legislature allows municipalities to establish municipal charges for a variety of services including those already set forth above. See infra pp. 4-5. In the case before the court, the non-residential development fee does not constitute a municipal charge giving rise to a lien enforceable by sale of the premises or barring a tax appeal.

The City is not the first to invoke extra-legislative steps to enforce collection of monies owed to it. For example, in Ocean Cnty. Bd. of Realtors v. Borough of Beechwood, 248 N.J. Super. 241 (Law Div. 1991), a municipality refused to issue zoning permits, building permits, and resale certificates of occupancy without

payment of all taxes, water and sewer charges.  In another case, <u>Builders League of South Jersey, Inc. v. Borough of Pine Hill</u>, 286 N.J. Super. 348 (App. Div. 1996), a municipality would not issue a building permit without payment of  past-due real estate taxes.  <u>See also</u> <u>Home Builders League of South Jersey, Inc. v. Township of Evesham</u>, 174 N.J. Super. 252 (Law Div. 1980) (same issue).  The courts held the municipalities acted beyond their statutory authority.  Here, Sea Isle City attempts to force payment of the fee by barring a tax appeal despite the lack of any statutory authorization.  The City cannot bar a tax appeal just because the fee has not been paid.

The City is not without remedies.  The Legislature provides an effective remedy to collect the fee.  "The payment of non-residential development fees . . . shall be made prior to the issuance of a certificate of occupancy for such development."  N.J.S.A. 40:55D-8.4(d).  To be sure, the Legislature made clear "[a] final certificate of occupancy shall not be issued for any non-residential development until such time as the fee imposed pursuant to this section has been paid by the developer."  <u>Ibid.</u>  In the normal course, the owner needs the certificate of occupancy to open for business or start collecting rents.  The Legislature created an economic dynamic forcing the owner to pay the fee to get the certificate of occupancy.  That dynamic topples when the property owner is able to use the property without a final

certificate of occupancy. The incentive of the property owner to pay substantially diminishes.

Acme has been operating for several years under a temporary certificate of occupancy. It is unclear whether this temporary certificate of occupancy is open-ended or repeatedly renewed. While the owner may be taking advantage of the grace of the City for issuing the temporary certificate, it does not open the door to barring a tax appeal, a remedy not contemplated nor permitted by the Legislature. The viability of other remedies, such as a suit for the fees or revocation of the temporary certificate of occupancy, is beyond the scope of this action.

As to the planning board escrow fees, the City is in the same predicament. A municipality collects escrow fees to cover the professional fees it incurs for application reviews and inspections. Flama Constr. Corp. v. Township of Franklin, 201 N.J. Super. 498, 505 (App. Div. 1985); N.J.S.A. 40:55D-8(b); N.J.S.A. 40:55D-53.1. Nowhere does the statute mention escrow fees constitute a lien or charge. There is simply no municipal charge enforceable by tax sale, or bar to a tax appeal. Rather, the statute only speaks in terms of the obligations of the developer to satisfy these escrow amounts.

As with the non-residential development fee, the Legislature created an effective method of ensuring payment of the escrow fees. In the normal course, the fees are paid "[i]n order for work to continue on the development or the application

. . . ." N.J.S.A. 40:55D-53.2(c). The municipality is also able to require escrow fees for inspections as well. N.J.S.A. 40:55D-53(h). "[T]he municipal engineer shall not perform any inspection if sufficient funds to pay for those inspections are not on deposit." Ibid. In other words, if the escrow is not satisfied, the project stops.

Incomplete final site work is part of the reason the City has not issued the final certificate of occupancy. It is unclear whether final site work is incomplete because unpaid escrow fees are holding up inspections.

As to the viability of another remedy, such as a suit seeking the fees or recission of the temporary certificate of occupancy, that is beyond the scope of the action here.

The tenant wants to appeal. Tying the payment of the non-residential development fee and escrow fees to a tax appeal is an extra-legislative attempt by the City to recalibrate the dynamic established by the Legislature. The law strictly construes attempts to block an appeal. J&J Realty Co. v. Township of Wayne, 22 N.J. Tax 157, 163 (Tax 2005); See also Great Adventure, Inc. v. Township of Jackson, 10 N.J. Tax 230, 233 (App. Div. 1988); ML Plainsboro Ltd. P'ship v. Township of Plainsboro, 16 N.J. Tax 250, 257 (App. Div. 1997). Acme wins nothing here except the ability to have the tax assessment adjusted if necessary. With the automatic counterclaim, this could result in an increase. See Campbell Soup Co. v. City of Camden, 16 N.J. Tax 219, 226-27 (Tax 1996).

The court is not going to upset the balance between the municipality and the taxpayer established by the Legislature. If the Legislature wanted the non-residential development fee or planning board escrow fees to be municipal charges blocking a tax appeal, it would have so specified. It did not. As to collecting the fees, the City is left to its remedies provided by law.

For the foregoing reasons, the court denies the City's motion.