55 N.J. Super. 153 (1959)
150 A.2d 88
HELEN KLINE, PLAINTIFF,
v.
BELLMAWR SEWERAGE AUTHORITY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 25, 1959.
*154 Mr. Louis N. Caggiano, attorney for plaintiff.
Mr. W. Louis Bossle and Mr. Carl H. Auerbach, attorneys for defendant.
SCHALICK, J.S.C.
This is a suit by plaintiff taxpayer seeking to invalidate the proposed sewer rates established by the defendant sewerage authority, and requiring the defendant to establish fair, just, uniform and equitable rates.
Plaintiff resides in Bellmawr in a section not previously connected with the municipal sewerage system. Under the formulated sewer proposal which will result in connecting plaintiff's property and other properties with the defendant's sewer system, rates have been fixed for District Two of $66 per year, and in the old or sewered section named District One the annual sewer rates shall be $40 per year. These districts were defined by "A resolution prescribing charges, rules and regulations relating to connection with and use of services of the sewerage system of the Bellmawr Sewerage Authority," adopted on June 18, 1957. The resolution fixes the service charge for the unsewered section at $66 per year and for the present sewered section at $44 per year, and all service charges for each type of property are fixed proportionate to the base service charge set up in each district.
Plaintiff seeks to void the $66 per year service charge and to require defendant to establish uniform service charges which plaintiff contends would be just and equitable.
*155 The facts were stipulated, the resolution admitted in evidence, together with a map of the proposed sewerage project explained in the stipulation.
The stipulations were:
The Borough of Bellmawr is a long and narrow municipality.
Prior to the reconstruction of the present sewer plant, about one-third of the western end of the municipality was serviced by sewer. The plant was a primary treatment plant, erected by the United States during World War II as part of the Bellmawr Housing Development.
The plant was donated to the Borough of Bellmawr, without cost, by the United States Government.
Gradually, the one-third of the community which was sewered was hooked up to the primary treatment plant by various developers. They paid the cost of hooking in and they passed on that cost to the purchasers of homes; they also made their own installation of mains, laterals, force mains, where necessary, and in two cases pumping stations. No work was done by the municipality at public cost except for two installations. Both were trunk lines, one a short line which cost $2,500 and was paid for out of an appropriation, so that it was paid for out of general taxation; the other trunk line was constructed in Browning Road, and it was paid for by a $45,000 bond issue, plus a contribution from the United States Government. That trunk line was constructed in the sewered area to the site of Niki installation by the United States Government. No improvements were made in the sewered area as local improvements.
In 1953, the State Board of Health of the State of New Jersey ordered the Borough of Bellmawr to reconstruct the primary treatment plant into a secondary treatment plant. The engineers employed by the municipality calculated that the cost of that change-over would be $225,000 but with engineering fees, financial costs, and counsel fees, the cost would be increased to $340,000.
The soil in the unsewered area constitutes for the most part a heavy clay or marl. It was unsuitable for cesspools *156 which were in use, and frequently those cesspools overflowed and created a health hazard. There was some demand for the sewering of the remaining area of the municipality.
The engineers calculated the cost of putting sewers in the remaining area at $935,529, but with financial costs, engineering fees, and counsel fees that figure was increased to an approximate $1,360,000.
The municipality considered doing the work of changing the treatment plant into a secondary treatment plant under a bond issue, in which event it would be a charge on all the taxpayers as a general improvement. They also considered doing the work as a local improvement, but it was ascertained that in some instances the mains would have to be laid as deep as 18 feet, and it was possible for a home owner having 100 feet of frontage, to be faced with an assessment of approximately $2,500. That was considered by the municipality to be prohibitory; moreover, the borrowing capacity of the municipality had almost reached its limit, and it could not even borrow the $340,000 to change over the treatment plant.
As a result, the defendant was formed; the municipality donated the plant, mains, laterals, rights of way, and pumping stations and equipment to the defendant without charge, but subject to the $45,000 bond issue, on which there was then an unpaid balance of $25,000.
After the formation of the defendant, it considered the same things which were considered by the municipality, that is, the improvement of the primary treatment plant into a secondary treatment plant, at an approximate cost of $340,000, and then the extension of the sewer system into the unsewered area at an approximate cost of $1,360,000. It finally determined to have all the work done at those approximate costs.
Before making that determination, it also considered permitting the municipality to do all of the work in the unsewered area as a local improvement, but, after going over all the figures with its engineers, that idea was abandoned.
Before any of the work was undertaken, the defendant *157 made its determination of the probable rates to be charged to all the residents for its services; it considered the fact that all of the residents in the sewered area, except the residents in the Government-owned Bellmawr Housing Development, had already paid for their sewers. Parenthetically, it is to be noted that the Bellmawr Housing Development now is owned by a mutual association, and the United States no longer has any interest in it.
In fixing the rates at $40 for the sewered area and $66 for the unsewered area, the defendant considered these facts and factors:
(1) That there were a total of 1,913 sewered units, not including the 500 sewered units of Bellmawr Housing Development in the sewered area;
(2) That there were but 1,005 houses built in the unsewered area; that approximately 40% of the unsewered area was not built on, but that connections would have to be made to the various trunk lines and laterals for future service to those unbuilt-upon lots;
(3) Basing the service charge on an allocation of cost alone as between the sewered area and the unsewered area would result in a service charge of $84 per year in the unsewered area and $24 per year in the sewered area;
(4) If the unsewered area had not been serviced, then for the increasing of the capacity and type of the new treatment plant, the service charge in the sewered area would be approximately $30 per annum;
(5) The ability to pay $84 per annum in the unsewered area was debated, and it was concluded that such a charge would be too high, and there would be the possibility of residents being unable to pay such a high charge;
(6) The ability to sell bonds of the authority with a sewer rate as high as $84 per annum was debated, and the defendant was advised by its financial advisers, Boland Saffin & Company, that it would be impossible to sell the bonds with a service charge of more than $66 per annum;
(7) The fact that the entire municipality had already paid $20,000 of the $45,000 bond issue out of general taxation, *158 and the fact that the entire municipality would have to pay the remaining $25,000, as a whole, the same reasoning is applicable to the $2,500 improvement above mentioned;
(8) That none of the inhabitants had paid for the original sewerage treatment plant, so that all of the inhabitants should have the benefit of the donation;
(9) The fact that all of the inhabitants would have to pay for the then present addition to the sewerage treatment plant, as well as the increased cost of maintenance and operation of the new plant.
In considering and debating all of those facts and factors, efforts of the authority were directed toward increasing the service charge to the residents of the sewered area as much as would be compatible with their idea of equitable treatment in the two sections.
Another factor, not referred to above, considered by the authority and which the authority believed had to be considered under the terms of the statute, was the population growth based on the past experience in the municipality from 1930 to 1957. Based on that prior growth, a population growth curve was protracted by the engineers up to the year 2010, which showed a growth from a present population of about 8,200 to a population of about 15,200, with the additional estimate that during that period of time the entire community would be built up. That population growth curve was based not only on the population figures of the Borough of Bellmawr, but on the growth furnished by the United States Census.
It was found necessary to create a bond issue of $1,700,000 to pay the cost of the entire project. The bonds were made payable in full at the end of 40 years. The service charge, which was based on the cost of installation and cost of operation, interest on the bonded indebtedness, and the amortization of the bonds, resulting in a charge of $40 in the sewered area and $66 in the unsewered area, was calculated to pay that entire cost within the 40 years.
Admitted in evidence is a map of the proposed sewerage project, made by Elson D. Killam, hydraulic and sanitary *159 engineer, Short Hills, N.J., dated April 29, 1957, which shows the sewered area of the municipality as being the northwestern part of the area where there are streets, but where there are diagonal lines in the uncolored area, there is no sewer. The colored areas in yellow, green, red, orange and brown are the unsewered areas to which sewerage was extended.
The defendant was created under the Sewerage Authorities Law, N.J.S.A. 40:14A-1 et seq. The present issue calls for an interpretation of the sections of the act authorizing the defendant to collect service charges.
The establishment of these service charges is defined in N.J.S.A. 40:14A-8:
"(b) Such rents, rates, fees and charges, being in the nature of use or service charges, shall as nearly as the sewerage authority shall deem practicable and equitable be uniform through the district for the same type, class and amount of use or service of the sewerage system, and may be based or computed either on the consumption of water on or in connection with the real property, making due allowance for commercial use of water, or on the number and kind of water outlets on or in connection with the real property, or on the number and kind of plumbing or sewerage fixtures or facilities on or in connection with the real property, or on the number of persons residing or working on or otherwise connected or identified with the real property, or on the capacity of the improvements on or connected with the real property, or on any other factors determining the type, class and amount of use or service of the sewerage system, or on any combination of any such factors, and may give weight to the characteristics of the sewage and other wastes and any other special matter affecting the cost of treatment and disposal thereof, including chlorine demand, biochemical oxygen demand, concentration of solids and chemical composition.
(c) The sewerage authority shall prescribe and from time to time when necessary revise a schedule of such service charges, which shall comply with the terms of any contract of the sewerage authority and in any event shall be such that the revenues of the sewerage authority will at all times be adequate to pay all expenses of operation and maintenance of the sewerage system, including reserves, insurance, extensions, and replacements, and to pay punctually the principal of and interest on any bonds and to maintain such reserves or sinking funds therefor as may be required by the terms of any contract of the sewerage authority or as may be deemed necessary or desirable by the sewerage authority. * * *"
*160 This statute creates "as a body corporate and politic sewerage authorities to have full responsibility and powers with respect to such works and the establishment, collection, enforcement, use and disposition of all such service charges." N.J.S.A. 40:14A-2(3). "`District' shall mean the area within the territorial boundaries of the county, or of the municipality or municipalities, which created or joined in the creation of a sewerage authority." N.J.S.A. 40:14A-3(6). The defendant district is the entire Borough of Bellmawr.
The defendant cannot derive its revenue from taxation nor from special assessments for local improvements. If we were dealing with a general improvement, the cost could be paid out of taxation, or if it were a local improvement, the property locally or peculiarly benefited might be assessed to the extent of any increase in value resulting therefrom. This statute has no provisions which permit the defendant to utilize these methods of paying the cost of improvements which have a place in municipal financing.
All bonds, all expenses of operation, and all budgetary items, debt service, amortization, reserves, sinking funds, and annual costs of operation must be paid from the service charges. Such service charges must meet these annual requirements so that the defendant is a self-liquidating entity.
We are not concerned with contracts with bond holders. The defendant attempts to glean from the bond provisions certain provisions as aids to substantiate its position, relying on the principle that the entire statute must be analyzed to ascertain the legal powers to fix rates vested in the defendant. Reference is made to the provisions authorized in bond resolution, N.J.S.A. 40:14A-16, which embrace the agreements with the bond holders. The court concludes these provisions add little to the sections of the statute defining the guides to the fixing of rates and service charges, for the need for flexibility in dealing with the bond requirements in municipal finance are known to be a separate division of statutory authority.
*161 Our concern is with the power of the defendant to fix rates and service charges as set forth in N.J.S.A. 40:14A-8(b) and (c) heretofore cited. The keystone is that such rents, rates, fees and charges "shall * * * be uniform throughout the district for the same type, class and amount of use or service of the sewerage system." Then the statute sets forth the formula which must be used. These service charges "may be based or computed either on the consumption of water on or in connection with the real property, making due allowance for commercial use of water, or on the number and kind of water outlets on or in connection with the real property, or on the number and kind of plumbing or sewerage fixtures or facilities on or in connection with the real property, or on the number of persons residing or working on or otherwise connected or identified with the real property or on the capacity of the improvements on or connected with the real property." After dealing with these several components which are to be considered, the statute summarizes and supplements by adding "or on any other factors determining the type, class, and amount of use or service of the sewerage system, or on any combination of any such factors * * *."
It has been established the entire borough is the defendant district. The type, class, and amount of use or service are the very foundation upon which the determination must be made, as twice stated in this provision. The several considerations set forth in the disjunctive are each to be measured in light of the "type, class, and amount of use and service" requirement.
In the subject case, the defendant divides the borough in two districts without statutory authority. The annual service charge in District One for a single dwelling would be $40, while in District Two such charge for a single dwelling would be $66, and a gas and service station with car washing service in District One would have an annual charge of $80 per year, and $132 in District Two, with all other charges for other classes proportioned accordingly.
*162 This schedule is not uniform and would not be valid unless there is legal support for the disparity. The defendant finds it in the provision that the "service charges, shall as nearly as the sewerage authority shall deem practical and equitable be uniform," gaining all of its strength from the discretion given by the words "practical and equitable." The defendant ignores uniformity except in so far as it limits it to location. The sewered area is uniform, the unsewered area is uniform, but as to each other they cease to approach uniformity.
There must be a different service charge for each type, each class, each amount of use, and in fixing those charges, they shall be uniform so far as it is practical and equitable to do so in the judgment of the defendant. Certainly the same class, the same type, the same amount of use must have the same charge throughout the district if it is to meet the test of uniformity, and the court finds no reason for the sewerage authority to decide otherwise. As to the different classes, the different types, the different amounts of use, there must be a flexibility and the practical and equitable approach to uniform service charges in relation of one type to another type, of one class to another class, must be left to the sewerage authority.
The defendant in this case admits that on an allocation of cost alone as between the sewered area and the unsewered area, the annual service charge would be $84 in the unsewered area and $24 in the sewered area, and if the sewered area had not been serviced then for increasing of the capacity and type of the new treatment plant, the service charge in the sewered area would be approximately $30 per year. It was decided $84 service charge was too high for a single dwelling. Moreover, the defendant was advised by its financial advisers it would be impossible to sell the bonds with a service charge of more than $66 per year. Admittedly, $66 was the highest the rate could be and that rate was assigned to the unsewered area, and the balance of the amount required, or $40 per year, was named as the rate for the sewered area. The underlying reason for establishing *163 the higher of the two rates belies the contention that the rates were uniform "as nearly as the sewerage authority" deemed "practicable and equitable."
In a few instances courts have upheld the right of a municipality to charge a higher rate for a municipal service to users in a different municipality than to users in its municipality. There are similar decisions under special circumstances. The court fails to find any authority which supports the arbitrary classification used in this case, which is primarily based on the cost of extending the service to a contiguous area in the same municipality with no other special circumstances to be considered.
N.J.S.A. 40:14A-35 provides "that this act shall be construed liberally * * * and a sewerage authority shall not be subject to regulation as to its service charges or as to any other matter whatsoever by any officer, board, agency, commission or other office of the State." The requirements of the statute imposed on the defendant in fixing service charges on the state of facts before this court are such that the defendant can gain little from this provision.
The decision of the court in Camden County v. Pennsauken Sewerage Authority, 28 N.J. Super. 586 (1953), affirmed 15 N.J. 456 (1954), deals with the right of a sewerage authority to exempt its public buildings from sewer charges. "The relations between the municipality and the authority, N.J.S. 40:14A-23, N.J.S.A. are subject only to the restraints inherent in the statutory scheme and in the contracts with the holders of outstanding bonds. Save in this wise restricted, the authority is free reasonably to fix the terms and conditions of service."
The interpretation of the statute in reference to the facts of the subject case restrains the defendant from giving effect to its classification of rates for such cannot be reasonably justified.
The action of the plaintiff is sustained and the proposed rates are declared invalid and the defendant is required to reschedule the rates and charges consistent with this opinion.