**William S. GREEN, Paul Klinkowski and Miles Weigold (in respect to 1993 assessment only), Plaintiffs,**

**v.**

**SUSSEX COUNTY, Delaware, Defendants.**

**Town of Bethany Beach, Intervenors.**

**C.A. Nos. 91A–12–001, 92A–06–007 and 93A–12–002.**

Superior Court of Delaware, Sussex County.

Submitted: Feb. 17, 1995.
Decided: May 1, 1995.

Karl Haller, Haller & Hudson, George-town, for Plaintiffs.

William S. Green, Bethesda, Maryland, pro se.

Dennis Schrader, Wilson, Halbrook & Bayard, Georgetown, for Sussex County.

Thomas I. Barrows, Hudson, Jones, Jaywork, Williams & Liguori, Dover, for Bethany Beach.

TERRY, Resident Judge.

Sussex County Council created the Bethany Beach Sanitary Sewer District pursuant to 9 *Del.C.* Ch. 65 in 1970 for the purpose of providing sewer service to the residents of Bethany Beach; the boundaries of the district being the corporate limits of the town. In accordance with the statutory scheme, an annual assessment calculated on front footage was levied on each of the properties benefited by the sewage facilities for the purpose of retiring the debt which the county incurred in order to construct the facilities.

In 1986 the boundaries of the district were expanded in accordance with the provisions found at 9 *Del.C.* § 6502 so as to encompass a larger area which extended from the northern boundary of Bethany Beach to the Indian River Inlet which was called the North Bethany Expansion. The legality of the expansion was challenged in a suit filed by some of the residents of the area (including the wife of one of the plaintiffs in this case) and was eventually settled by a stipulation which dismissed the action in return for an agreement by the county to limit the density of future development in the expansion area. The county then proceeded to sell bonds and constructed sewage facilities in the North Bethany Expansion area. Rather than run a direct line to the treatment plant, the new facilities constructed in the expansion area were connected for sewage transportation purposes to the existing sewage disposal facilities which had been previously constructed for the original Bethany Beach Sanitary Sewer District. Another expansion area called Sussex Shores was similarly incorporated into the Bethany Beach Sanitary Sewer District and was also provided with sewage disposal facilities and connected to the original sewage facilities.

The Bethany Beach Sanitary Sewer District is one of eight sanitary sewer districts created and operated by the Sussex County Council. Each district is assessed annually by the county pursuant to 9 *Del.C.* § 6513 in amounts sufficient to raise the necessary funds to make the annual payments on the bonds issued to finance the cost of constructing the sewage facilities for each district. The amount assessed to each district is collected by levying a charge on the properties benefited therein calculated on the front foot method through the adoption of assessment rolls each year after a public hearing.

The Bethany Beach Sanitary Sewer District assessment roles for the years 1991, 1992 and 1993 adopted by the Sussex County Council provided for different rates of assessment for each of the three regions within the district. Properties in the original Bethany Beach Sanitary Sewer District which encompasses the town of Bethany Beach were assessed $0.69 per front foot in 1991, whereas properties in the Sussex Shore portion of the Bethany Beach Sanitary Sewer District were assessed $5.02 and properties in the North Bethany Expansion area were assessed $13.09. This discrepancy has continued in slightly varying amounts up to the present.

The county's policy is to assess the cost of facilities against those properties which are benefited by the facilities. The original Bethany Beach Sanitary Sewer District facilities for the area covered within the limits of the town of Bethany Beach were constructed a number of years back when construction costs were cheaper and governmental grants abundant. When the Bethany Beach Sanitary Sewer District was expanded to bring in the North Bethany and Sussex Shores areas, the original district already had facilities in the ground and the residents of the original area were paying a relatively low annual debt service to retire the bonds issued to construct their facilities. The county had to sell other bond issues to build the facilities for the North Bethany and Sussex Shores areas at a time when grants had shrunk dramatically and costs had risen. The county's policy was and is to assess costs against the North Bethany Expansion area and Sussex Shores so that properties in each area would retire the debt actually incurred for their facilities while the properties in the older Bethany Beach area would continue to retire

the debt for their facilities.[1] This goal was accomplished by creating subdivisions within the Bethany Beach Sanitary Sewer District whereby the assessments per front foot would differ between the three identifiable areas.

The plaintiffs who own properties in the North Bethany Beach Expansion area filed a complaint for a declaratory judgment and also sought a writ of certiorari for the purpose of invalidating the assessment policy on the theory that they are entitled to have the annual assessments equalized throughout the entire district. Such an equalization would lead to a dramatic rise in the charge to each property in the original area and an even larger drop in the charge to each property in the expansion area. Both sides have filed motions for summary judgment and the simplest way to decide this matter is to consider it in the context of the writ of certiorari first and the declaratory judgment action second.[2]

### Certiorari

■ A number of Delaware decisions have made it clear that the Superior Court may review the legality of property assessments on a common law writ of certiorari. *Delaware Barrel & Drum Co. v. Mayor, etc., of Wilmington,* Del.Super., 175 A.2d 403 (1961). The scope of review, however, is limited to correct errors of law; to review proceedings not conducted according to law; and to restrain an excess of jurisdiction, all of which must appear on the record. The transcript of the evidence below is not part of the reviewable record and the Court cannot examine the transcript in order to evaluate the adequacy of the evidence which supports the conclusion rendered below. *Goldstein v. City of Wilmington,* Del.Supr., 598 A.2d 149 (1991); *Shoemaker v. State,* Del.Supr., 375 A.2d 431 (1977); *Matter of Butler,* Del.Supr.,

609 A.2d 1080 (1992); *Brandywine Securities, Inc. v. Department of Licenses and Inspection, City of Wilmington,* Del.Super., 1993 WL 18784, C.A. No. 92A–05–012, Toliver, J. (Jan. 22, 1993); *Rodenhiser v. Department of Public Safety,* Del.Super., 137 A.2d 392 (1957).

In respect to the plaintiff's writ of certiorari, I will consider that the record consists of the assessment rolls duly adopted by resolution of the Sussex County Council for the years 1991, 1992 and 1993 and I will consider whether by adopting them the council has exceeded its power or otherwise acted contrary to law.

Thus, the question is whether the county council can levy higher assessments on properties in one part of a sanitary sewer district than it levies on those in another or, conversely, do the rates of assessment of properties in the same sanitary sewer district have to be equal? The county's rationale is that differences in assessment rates are necessary to further a policy that residents of an area which is being connected to existing sewage disposal facilities will pay the cost of the new facilities with which they are provided, so that users of an existing sewage system will not be required to subsidize the extension of the system to new users.

The starting point is the statute under which the assessments are levied. At 9 *Del.C.* § 6513 (which was enacted in 1965) it says:

a. The county government each year, at a time to be fixed by it, shall, after a public hearing, establish an annual assessment roll for the sanitary sewer or water district which shall be known as the "Sanitary Sewer District Assessment," or "Water District Assessment."

---

1. This is an over simplification because in fact the residents of the expansion areas also pay their share of the bonded debt for the facilities previously constructed in the original area which they also use. However, the principle remains the same for the purpose of this issue. A mathematical formula created by the county's consultants is employed to allocate the costs and arrive at the appropriate assessments.

2. The record in this case as certified by the county consists of the assessment rolls for the years in question as adopted by the Sussex County Council together with transcripts of the testimony taken at the three public hearings. The plaintiffs have also included certain exhibits while the defendants have filed the joint affidavit of Russell W. Archut and David B. Baker in support of the respective cross motions for summary judgment.

b. The total amount assessed for each year shall be sufficient to provide funds required to reimburse the County for sums to be expended for retiring the bonds which have been issued, for the payment of the interest due on the bonds, for maintaining or improving the sewerage or water system and for paying the necessary general expenses of the sanitary sewer or water district.

The General Assembly subsequently enacted 9 *Del.C.* § 7001(a) in 1970 which granted home rule to Sussex County by conferring on Sussex County Council "all the powers which, under the Constitution of the State, it would be competent for the General Assembly to grant by specific enumeration, and which are not denied by statute." The General Assembly also provided at § 7001(b) that the powers under this reorganization law "shall be construed liberally in favor of the county."

■ Thus, it is apparent that the county has the specific statutory authority by virtue of 9 *Del.C.* § 6513 to establish an assessment roll for a sanitary sewer district and by virtue of 9 *Del.C.* § 6514 to collect the annual assessments as the county collects other county taxes. The county does not have specific statutory authority to adopt an assessment roll which levies different rates of assessment between subdivisions within a sanitary sewer district in order to further the county's policy as stated above.

Historically, counties, being political subdivisions of the State, have been considered to have only those powers expressly delegated to them by the General Assembly. Indeed, that is the thrust of the cases cited by plaintiffs of which *State v. Penn Central*, Del.Super., 445 A.2d 939 (1982) and *Mayor v. Smentkowski*, Del.Supr., 198 A.2d 685 (1964) are good examples. However, with the increasingly complex and fluid problems arising today which must be resolved by local government, the General Assembly has enacted home rule statutes which in many cases override pre-existing, specific statutory grants of power, the purpose of which is to give local governments the flexibility required to discharge their functions.

■ A home rule statute such as that found at 9 *Del.C.* § 7001 which gives Sussex County Council all of the powers which it would be competent for the legislature to grant by specific enumeration and which are not prohibited by statute was intended, as evidenced by § 7001(b), to be liberally construed in favor of the county. Thus, the subsequently enacted home rule statute with its grant of broad general powers is sufficient, in the absence of any specific constitutional or statutory denial of the power, to confer authority on Sussex County Council to adopt an assessment roll which creates subdivisions for assessment purposes within the boundaries of a sanitary sewer district.

The Court of Chancery held that a similar home rule provision in the City of Dover Charter was sufficient to empower the city council to levy special sewer assessments even though there was no specific authority to be found elsewhere in the Charter. On appeal this holding was apparently conceded, since it was not argued before or decided by the Delaware Supreme Court. *Paul Scotton Contracting Co., Inc. v. Mayor and Council of Dover*, Del.Ch., 301 A.2d 321 (1972), *Aff'd.*, Del.Supr., 314 A.2d 182 (1973). Furthermore, even though the applicable statute at § 6513(a) speaks in terms of adopting an assessment roll for "the sanitary ... sewer district," it does not necessarily follow that separate assessment rolls cannot be adopted for one or more subdivisions within the boundaries of a sewer district just as it does not follow that the Sussex County Council cannot create subdivisions within a sewer district as necessary to further its policy of allocating the cost of facilities to those who benefit from them. In *Hickman v. Workman*, Del.Supr., 450 A.2d 388 (1982), the Delaware Supreme Court held that even though a statute established the boundaries of councilmanic districts in Sussex County, a home rule section found elsewhere in the statute conferred power upon the council to reapportion itself. The Court rejected the application of the doctrine *expressio unis est exclusio alterius* which means the expression of one thing is the exclusion of another.

Thus, an application of the principles in *Paul Scotton Contracting Co., Inc. v. Mayor*

*and Council of Dover* and *Hickman v. Workman* lead to the conclusion that although § 6513 speaks in the singular in respect to an assessment roll for a sewer district, the home rule powers found at § 7001 are sufficient to confer power upon the Sussex County Council to create subdivisions within a sanitary sewer district and to adopt different rates of assessment for each subdivision in furtherance of its policy in respect to allocating costs and benefits. This conclusion flows from the fact that the General Assembly can delegate this power to the county and in fact has done so by giving the county broad home rule powers.

■ Furthermore, generally accepted principles of statutory construction require one to interpret a statute so as to give "a sensible and practical meaning to a statute as a whole" and to give effect to the object sought to be attained and to the general intent of the General Assembly. *E.I. duPont de Nemours & Co. v. Clark,* Del.Supr., 88 A.2d 436, 438 (1952). If the "literal reading of a statute leaves a result inconsistent with the general statutory intention, such interpretation must give way to general intent." *Hayward v. Gaston,* Del.Supr., 542 A.2d 760 (1988). Statutes are also to be interpreted as a whole in an effort to harmonize the parts. *Murphy v. Board of Pension Trustees,* Del. Supr., 442 A.2d 950 (1982).

I have already said that the home rule statute at § 7001 gives the council the power to separately assess subdivisions within a sewer district even if the power cannot be found by a literal reading of § 6513, but I also have to consider § 6513 in the context of § 6510 which reads:

In the case where a sanitary sewer or water district shall include areas wherein sanitary sewers or water systems have been constructed under the authority of the county government, or by municipalities, corporations or individuals, the necessary adjustments shall be made with each property owner for those costs already incurred by the property owner when those sewers or water systems were constructed. Such excess costs shall be credited to future assessments levied by the district.

It is apparent that the General Assembly contemplated at § 6510 that residents in a newly created sewer district who already had provided for their own sewage facilities should receive a credit and should not have to subsidize the provision of facilities to new users. This manifestation of the legislative intent further buttresses my interpretation of § 6513 in the context of § 7001.

■ Finally, the Sussex County Council has enacted an ordinance (Sussex County Code § 110–88) which reads in part, "(t)he amount required from each district to reimburse the county shall be equally proportioned to the assessable footage in the district." This ordinance is read by the plaintiffs as requiring uniformity of assessment throughout each district. Plaintiffs say that the creation of subdivisions within a sewer district which are assessed at different rates violates the plain language of the ordinance. The principles of statutory construction mentioned above apply with equal force here. The ordinance does not prohibit the subdivision of a district into different areas of assessment. At § 110–82 the council has required developers of unsewered properties brought into an existing sewer system by an extension to pay the cost of providing sewage facilities to the new area, thus evidencing an intent that existing users not subsidize the provision of sewage facilities to new areas. A literal reading of § 110–88 would negate that intent. The Court should also give deference to the Sussex County Council's interpretation of its own ordinance, at least in respect to divining its intent when it was adopted. The fact that the Sussex County Council has provided by the adoption of the assessment rolls for different rates of assessment within the sewer district indicates that it has interpreted § 110–88 to permit what it did and this interpretation is entitled to great weight as an indication of legislative intent. *State v. Mayor and Council of Wilmington,* Del.Supr., 163 A.2d 258 (1960) and *Vassallo v. Haber Elec. Co.,* Del.Super., 435 A.2d 1046 (1981). The subsequent adoption of assessment rolls by the council pursuant to § 6513 and the home rule authority at

§ 7001 would also override a prior inconsistent ordinance.

So for the foregoing reasons, I conclude that the creation of subdivisions within a sewer district, each of which has a different rate of assessment, in furtherance of the county's policy of allocating costs and benefits is not, on its face, beyond the power of the county and therefore is not invalid. Consequently, the Defendant's motion for summary judgment on this issue is *granted* and plaintiff's complaint on the writ of certiorari is *dismissed.*

### Declaratory Judgment

The plaintiffs raise a number of other arguments in support of their motion for summary judgment which require the consideration of evidence outside the record and therefore are not the proper subject of review on a writ of certiorari. However, I will consider the issues raised by the cross motions for summary judgment in the context of the declaratory judgment action.

### a. *equal protection of the laws*

Plaintiffs say that they have been denied the equal protection of the laws due to the fact that they and 95% of the property owners in North Bethany are non-resident property owners and therefore cannot exercise the power to vote and thereby change laws and procedures. The cases cited by plaintiffs speak in general terms about the ability of residents who don't like a particular rate scheme to use their vote to make changes. *Ball v. James,* 451 U.S. 355, 371, 101 S.Ct. 1811, 1821, 68 L.Ed.2d 150 (1981); *Meglino v. Township Comm. of Eagleswood,* 103 N.J. 144, 510 A.2d 1134, 1142 (1986).

■ Intertwined in this argument is the assertion that the Sussex County Council made extraordinary efforts to help the residents of another sewer district in the West Rehoboth area obtain favorable financing and hence lower costs while failing to exert similar efforts on behalf of the residents of the North Bethany expansion area, presumably because there are many voters in West Rehoboth and few in North Bethany. However, assuming that all of this is true, the financing for the North Bethany area was put in place and the rates of assessment first set in 1988 by one county council whereas the activity relating to West Rehoboth was undertaken by a different county council beginning in 1991 and ending in 1993. No case is cited, nor am I aware of any, which would establish a denial of plaintiffs' rights to equal protection of the laws under these assumed facts (taken from plaintiffs' brief) and therefore summary judgment on this issue is *granted* in favor of the defendants.

### b. *uniformity of taxation*

The plaintiffs also allege that the unequal assessments violate the uniformity of taxation principle because the assessments are required under 9 *Del.C.* § 6514 to "be collected by the county government as are other county taxes." Plaintiffs then refer to Article VIII of the Delaware Constitution which provides:

> All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.

■ The law in Delaware has been clearly established and it is that governments may classify persons and property differently for taxation so long as the classification is reasonable. The classification must not be arbitrary and capricious; it must rest on a reasonable basis; it cannot bear unequally on persons or property of the same class; and the burden is on the objector to establish the unreasonableness of the classification since its reasonableness is presumed. *Conard v. State,* Del.Super., 16 A.2d 121 (1940) and *Aetna Cas. & Sur. Co. v. Smith,* Del.Supr., 131 A.2d 168 (1957).

Plaintiffs cite to several cases where the courts in other states have either mandated or approved assessment schemes which required equal assessments between older sewered areas and newly sewered areas within the boundaries of the same municipality or district. *Kline v. Bellmawr Sewerage Authority,* 55 N.J.Super. 153, 150 A.2d 88 (1959) *aff'd sub nom Landy v. Bellmawr Sewerage Authority,* App.Div., 61 N.J.Super. 396, 161 A.2d 111 (1960); *Antlers Hotel, Inc. v. Town of City of Newcastle,* 80 Wyo. 294, 341 P.2d 951 (1959); *Huber v. Denger,* 38 Ohio St.3d

162, 527 N.E.2d 802 (1988); *City of Clovis v. Crain,* 68 N.M. 10, 357 P.2d 667 (1960). However, those cases are distinguishable as either turning on statutes which were interpreted to require equal assessment or on assessment plans adopted by a municipality making a policy decision to equalize assessments. In the case at bar the statutes permit the county to set different rates for different classes of property and the county has adopted a policy of allocating costs to benefits. Therefore, the cases cited by the plaintiffs are not relevant.

 The uncontroverted record establishes the fact that the Sussex County Council has classified the properties in the North Bethany Expansion area differently than those within the boundaries of the original Bethany Beach Sanitary Sewer District for the purpose of taxation. The rationale underlying the different classifications is to allocate the costs of sewage facilities to those who benefit from them. Governmental bodies have wide latitude in making such classifications, and in *Conard,* 16 A.2d at 125, it was said:

> The courts will not assume to substitute their judgment as to what is reasonable and proper, or whether the classification is the wisest or best that could be made, and the classification will be held valid if the court is able to see that the Legislature could regard it as reasonable and proper without doing violence to common sense.

The question of allocating the costs of providing local service is a policy question best resolved by local government. I cannot say that the classification selected by the Sussex County Council in the exercise of its right to set policy is unreasonable or that it does violence to common sense.

There is also nothing in the record to contradict the defendants' affidavit that the costs have, in fact, been accurately determined so that the actual rates of assessment are fairly calculated in order to effectuate the county's policy of allocating costs. There being no material facts in dispute in this respect, I *grant* summary judgment to the defendants on this aspect of the complaint.

### c. *res judicata*

Defendants claim that plaintiffs' action is barred by the doctrine of res judicata since the wife of William Green (one of the plaintiffs here) was one of the plaintiffs in a suit which was filed in 1987 challenging the legality of Sussex County Council's action in expanding the Bethany Beach Sanitary Sewer District to include the North Shores area without conducting a referendum. That suit was eventually settled. At that time an estimate of the sewer rates was apparently available but no assessment roll had been adopted. Defendants say that the prior judgment bars a second suit on the same cause of action by persons in privity with those plaintiffs and also bars issues which were raised or which might have been raised in that suit citing *Foltz v. Pullman, Inc.,* Del.Super., 319 A.2d 38 (1974).

 Although it is not necessary to decide this issue in light of the other decisions made herein, I do not agree that this action is barred. The assessments complained of here were not even adopted in 1987 and therefore could not be raised as an issue in the 1987 case. The 1987 case was not a class action and neither William Green nor the other two plaintiffs in this case were parties to that action. Although it has been pointed out that one of the plaintiffs, Paul Klinkowski, no longer owns his property, he still has an interest in any potential tax refund which could result if the suit were to be successful and thus he has an interest in this litigation sufficient to allow him to continue to be a party.

### Conclusion

Summary judgment in favor of the defendants is **granted** for the reasons stated above.