# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| MIDDLECAP ASSOCIATES, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. N23C-03-181 CEB |
| v. | ) ) | |
| THE TOWN OF MIDDLETOWN, a municipal corporation of the State of Delaware, and THE TOWN OF MIDDLETOWN TOWN COUNCIL, the governing body of the Town of Middletown, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: December 1, 2025
Decided: January 30, 2026

## <u>MEMORANDUM OPINION</u>

*Upon Consideration of Plaintiff's Appeal*:
**AFFIRMED**.

John W. Pardee, Esq. & Mark A. Denney, Jr., Esq., BROCKSTEDT MANDALAS & FREDERICO, LLC, Dover, Delaware. *Attorneys for Plaintiff*.

Scott G Wilcox, Esq., GIORDANO & GAGNE, LLC, Wilmington, Delaware. *Attorney for Defendants*.

**Butler, R.J.**

This dispute is back before the Court after a remand to the Middletown Town Council which, consistent with the Court's previous ruling, has again considered a conditional use permit requested by Middlecap and again voted against it. The Court in this decision must reckon with "the record" and the quite circumscribed scope of review of the Town Council's decision against the development of the apartment complex proposed by Middlecap.

## FACTUAL AND PROCEDURAL BACKGROUND

Middlecap Associates owns approximately fifteen acres of land in the Town of Middletown.[1] The property is located along Route 299, what some would call the "main road" into Middletown off Route 1. About twenty years ago, long before the instant dispute began, Middlecap proposed a "big box" shopping center on the site and the Town approved of the idea.[2] As future plans for growth were formalized for Middletown, the as yet unbuilt shopping center remained a part of them. Indeed, the land was zoned C-3 "Employment/Regional Retail."[3] The zoning code describes the Town's aspirations for the use of land in that area:

> Development design within the C-3 district will provide service and retail environments and employment/office opportunities in a manner compatible with the historic character, scale, and architectural type of Middletown.[4]

---

[1] Second Amended Verified Compl. [hereinafter Compl.] ¶6.
[2] Defs.' Opening Br. in Support of Mot. to Dismiss Compl. at 3.
[3] *Id.*
[4] Middletown Zoning Code § 4.I.

Had Middlecap stuck to its original plan, it could have built a shopping center at the site "by right" because that use was specifically permitted by the zoning code.

Times changed, as did Middlecap's vision for its use of the land. Development in C-3 zoning in Middletown permits "conditional uses subject to special requirements" that are not necessarily tied directly to "employment" or "regional retail."[5] These include 1) day care centers, 2) selling goods directly from trucks, and 3) garden apartments.[6] Middlecap decided to seek a conditional use permit to develop the land as garden apartments.

The route to a conditional use permit in Middletown begins with the Planning Commission.[7] Middlecap presented its plan for a garden apartment complex to the Planning Commission. The Planning Commission voted against it.[8] But the Planning Commission's vote is not the final word – the Town Council makes the ultimate decision.[9] After a public hearing in February 2022, the Town Council also voted against the conditional use permit.[10]

---

[5] *Id.* § 4.I.(2).
[6] Garden apartments are contemplated by the Zoning Code and are permitted by right in R-3 districts. *Id.* § 4.E.
[7] *Id.* § 10.A.
[8] Compl. ¶14.
[9] Middletown Zoning Code § 10.A.(1).
[10] Compl. ¶20.

Middlecap filed a Verified Petition in the Court of Chancery to challenge the Council's decision. At the time, there was a long history of Chancery reviewing county and local government control of land use matters.[11] These typically were styled as complaints for declaratory judgment and an injunction. The Town Council moved to dismiss the Chancery case, arguing that the Court lacked subject matter jurisdiction because Middlecap had an adequate remedy at law, to wit: review by way of a certiorari proceeding in Superior Court.[12]

Apparently, Middletown was not the only local jurisdiction questioning Chancery's jurisdiction in land use cases. At about the same time, the Town of Newark had a case that did so,[13] as did the City of Rehoboth.[14] The Newark case – *Delta Eta Corp. v. Newark* – became the flagship decision marking Chancery's departure from its participation in reviewing conditional use permits.

---

[11] Cases supporting this notion are legion. Middlecap's brief in the Court of Chancery cited to eighteen such cases. Pet'r's Answering Br. in Opp'n to Mot. to Dismiss at 14-15, *Middlecap Assocs., LLC v. Town of Middletown*, 2023 WL 2981893 (Del. Ch. Feb. 2, 2023). In *Delta Eta*, the Plaintiff cited to thirty cases in its answering brief. Pl.'s Answering Br. in Opp'n to Def.s' Mot. Dismiss at Ex. B, *Delta Eta Corp. v. City of Newark*, 2023 WL 2982180 (Del. Ch. Feb. 2, 2023).

[12] Resp'ts' Opening Br. in Support of Mot. Dismiss at 8-9, *Middlecap Assocs., LLC v. Town of Middletown*, 2023 WL 2981893 (Del. Ch. Feb. 2, 2023).

[13] *Delta Eta*, 2023 WL 2982180.

[14] *330 Hospitality Group, LLC v. City of Rehoboth Beach,* Del. Ch., C.A. No. 2022-0424, Will, V.C. (Oct. 17, 2022) (Bench Op.). A fourth case – *Citizens Against Solar Pollution v. Kent County* – should have collected frequent flyer miles for all its travels. In March 2025, it was finally concluded by the Supreme Court. *Citizens Against Solar Pollution v. Kent Cnty.*, 339 A.3d 1229 (Del. 2025).

In *Delta Eta*, Newark denied a conditional use permit to the Delta Eta fraternity and Delta Eta sued in Chancery.[15]  In reviewing what Delta Eta called a long history and tradition of Chancery Court rulings in conditional use cases, the Chancery Court found that many of them were really zoning disputes, not conditional use disputes.[16]  Separating the "legislative act" of zoning, for which no adequate remedy at law existed, from "quasi-judicial" acts, for which certiorari review is available, Chancery decided that a conditional use permit was "quasi-judicial" and there was an adequate remedy at law by way of certiorari review in Superior Court.[17]  The Court dismissed Delta Eta's case but permitted its transfer to Superior Court.[18]

On the same day as the *Delta Eta* ruling, Chancery Court dismissed Middlecap's Chancery lawsuit, transferring it to this Court.[19]

Once in Superior Court, other issues surfaced.  The Town Council argued that the Superior Court case was time-barred.  Council members were sued individually and sought dismissal as individual defendants.  After briefing, the Superior Court

---

[15] *Delta Eta*, 2023 WL 2982180, at *1.
[16] *Id.* at *11-17.
[17] *Id.*
[18] *Id.*
[19] *Middlecap Assocs., LLC*, 2023 WL 2981893, at *2 (Del. Ch. Feb. 2, 2023).

issued a split decision – dismissing the individual council members but ruling that the certiorari case was not time-barred.[20]

After further briefing, the Court ruled that the record was insufficient to permit review. The Court said:

> merely reciting a code provision in support of a "no" vote is not a statement of reasons for the vote. Certainly, a reviewing Court does not need an extensive recitation of all the whys and wherefores, but some connection of the facts as found by the council person and the legal standard being applied is essential to ensure that the quasi-judicial decision was made with fidelity to the law.[21]

The Court therefore denied Plaintiff's claim for relief but remanded the dispute for further deliberations by the Town Council so it could create a record capable of review.[22]

The matter went back to the Town Council, where by agreement of the parties, it was again put to a hearing and vote by the Council.[23] The second hearing featured a full presentation by Middlecap, including a review of the other garden apartment applications that had been granted conditional use permits in Middletown, a warning to the Council about the *Gibson* decision (to be discussed presently), and a refutation

---

[20] *Middlecap Assocs., LLC v. Town of Middletown*, 2023 WL 6848999, at *6 (Del. Super. Oct. 16, 2023).

[21] *Middlecap Assocs., LLC v. Town of Middletown*, 2024 WL 3385825, at *5 (Del. Super. July 11, 2024).

[22] *Id.* at *6.

[23] Pl.'s Opening Br. On Appeal from Second Denial of Application [hereinafter Pl.'s Opening Br.] at 4.

of any complaints about traffic because the Delaware Department of Transportation had assured Middletown that garden apartments would result in less peak traffic than the previously planned shopping center would.[24]

The Town Council heard all of this and again voted against the proposal. While not as fulsome as a written, judicial ruling, the hearing transcript is quite clear that Council had read and understood the legal framework in which they were operating. Each vote referenced at least one of the three analytical terms for deciding conditional use permits: 1) adverse effects on the surrounding neighborhoods, 2) detriment to the public welfare, or 3) conflict with the Comprehensive Plan.[25] Indeed, most of Middlecap's presentation was an attempt to convince the Council that the plan satisfied these very criteria. When the vote was called, Middlecap's arguments did not convince the Council that the permit should be granted and the Council members each stated their reasons for concluding as much.

This brings us finally to the present iteration of this lawsuit. Middlecap has appealed the Town Council's second "no" vote on its application for a conditional use permit and the matter has now been fully briefed.

---

[24] *Id.* at 4-6.
[25] *See* Middletown Zoning Code § 10.A.

**ANALYSIS**

## I.      Writ of Certiorari Review

A writ of certiorari is simply the power of a superior court to call for examination of the record of an inferior tribunal, be it a court, administrative agency or other "quasi-judicial" body.[26]  The writ is available when other forms of review – such as direct appeal by right – are not.[27]  A writ of certiorari permits the reviewing court to consider only whether the lower tribunal 1) exceeded its jurisdiction, 2) committed an error of law, or 3) proceeded irregularly.[28]

### A. The Record for Certiorari Review

The fact that review is available does not define the Superior Court's scope or standard of review of the record received or, for that matter, exactly what "record" is being reviewed.  Fleshing out these details has been examined in a number of judicial decisions.

One instructive case from the Delaware Supreme Court, *Black v. New Castle County Board of License*, is worth quoting at some length:

> By its nature, the extent of the record appropriate for review on a writ of *certiorari* is limited: "A *certiorari* proceeding differs fundamentally from an appeal in that the latter brings the case up on its merits while the ... (former) brings up the record only so that the reviewing court can

---

[26] 14 C.J.S. *Certiorari* §1.

[27] *Delta Eta Corp. v. City of Newark*, 2023 WL 2982180, at *10 (Del. Ch. Feb. 2, 2023) (citing *In re Petition of Howell*, 2007 WL 1114123, at *1 (Del. 2007)).

[28] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2004 WL 2921830, at *2 (Del. 2004).

merely look at the regularity of the proceedings." The proper record for review is "limited to the complaint initiating the proceeding, the answer or response (if required), and the docket entries." Any "evidence received in the inferior court is not part of the record to be reviewed." This Court has thus stated that the transcript of the proceedings is not a proper part of the record, at least in the context of *certiorari* review of a Justice of the Peace Court proceeding.

The majority of cases addressing what constitutes a proper record, like *Black*, are appeals of decisions from a Justice of the Peace Court. In *Maddrey v. Justice of the Peace Court 13,*[29] the Supreme Court discussed the record on certiorari in detail.

Maddrey was summarily dispossessed of her rental unit after a hearing in the Justice of the Peace Court.[30] That decision was affirmed by a three-judge panel of Justice of the Peace Court judges. Normally, direct appeals or trials *de novo* are available for judgments in JP Court, but neither avenue is available in summary possession cases. The absence of any statutory right of review in any forum caused Maddrey to seek review by writ of certiorari in Superior Court.[31]

After Superior Court denied relief, Maddrey appealed. On appeal, the Supreme Court held that while certiorari review was proper, it was "limited to errors which appear on the face of the record and does not embrace an evaluation of the evidence considered by the inferior tribunal," and as such, "[t]he transcript of the evidence below is not part of the reviewable record and the [Superior] Court cannot

---

[29] *Maddrey v. Just. of Peace Ct. 13*, 956 A.2d 1204 (Del. 2008).
[30] *Id.* at 1207-08.
[31] *Id.* at 1208.

9

examine the transcript in order to evaluate the adequacy of the evidence . . . ."[32] Rather, the record may only consist of initial papers, the complaint, answer or response, and the docket entries.[33]

The Supreme Court's concern was that common law writs of certiorari not be used as "an end run around" the General Assembly's decision to not permit traditional appellate review of certain types of cases.[34]

> "Common law writs of certiorari in this context cannot, therefore, be the functional equivalent of an appeal. The General Assembly could have provided for ordinary review de novo, traditional appellate review on the record or statutorily defined certiorari review. They did none of the above. To allow common law writs of certiorari to be used to prolong summary possession actions defeats the clear legislative intent to end those proceedings quickly."[35]

The record is necessarily limited to prevent certiorari review from evolving into "an impermissible full appellate review that is inconsistent with both the function of the common law writ and the General Assembly's intent."[36] Thus, the Court held that the JP Court transcript could not form part of the record as it

---

[32] *Id.* at 1216-17 (first quoting *Mason v. Bd. of Pension Trs.,* 468 A.2d 298, 299 (Del. Super. 1983); and then quoting *Green v. Sussex County,* 668 A.2d 770, 773 (Del. Super. 1995)).
[33] *Id.* at 1216.
[34] *Id.* at 1214.
[35] *Id.* at 1215.
[36] *Id.*

"necessarily contemplates that the Court will weigh and evaluate the evidence" and thus enlarge certiorari review.[37]

## B. The Record In This Case

We might question whether the limitations on review set by the Supreme Court in *Maddrey* are confined to Justice of the Peace Court appeals in summary possession cases, but the Court said the limitation was for a reason: if the General Assembly wanted to provide for full appellate review, it could have done so.[38] The General Assembly has provided for Superior Court review of decisions of zoning boards of county and local governments.[39] There is no similar provision in the Code with respect to conditional use decisions of a County or Town Council. It is reasonable to conclude that the General Assembly does not wish to authorize a full review of local government legislators' conditional use decisions. This may be due to the fact that a full review necessarily puts the Court in the position of examining the entrails of the decisions of a locally elected town council.

Certiorari review of conditional use permits is novel, and this Court must reconcile the Supreme Court's instructions in *Maddrey* with the record available for review in conditional use permitting. When Superior Court reviews decisions of a

---

[37] *Id.* at 1216-17.
[38] *Id.* at 1215.
[39] 22 *Del. C.* §328.

11

JP Court, the record consists of a complaint and an answer, and docket entries established by court procedures. None of these exist in conditional use permit decisions by a town council. The Middletown Town Council did not create a "docket," nor did it write out a judicial opinion, "quasi" or otherwise. Its reasons are stated in a transcript, which must be reviewed to perform even the most basic judicial oversight.[40]

That said, this Court's review continues to be informed by the limitations articulated in *Maddrey*. For example, Middlecap argues that the Town Council failed to give due consideration to the fact that DelDOT studies indicated the garden apartments would create less traffic than the previously planned shopping center.[41] DelDOT's opinions on traffic volume do not necessarily negate the Council's more generalized concerns for "both traffic and safety."[42] How the Council chose to weigh the evidence before it and the importance, or lack thereof, that it placed on traffic impact would necessarily embroil the Court in a review of the evidence and the relative strength of the competing arguments, inviting the Court to substitute its

---

[40] *See 330 Hosp. Grp., LLC v. City of Rehoboth Beach*, 2024 WL 3520448, at *5 (Del. Super. July 23, 2024), *appeal dismissed*, 328 A.3d 285 (Del. 2024) (finding that the Court had no choice but to review the transcript where no other record existed to conduct review). *See also Citizens Against Solar Pollution v. Kent Cnty.*, 2025 WL 751102, at *3 (Del. 2025) (individual docket exhibits were not necessary for Superior Court review but that the Court could have requested the exhibits if needed).

[41] Pl.'s Opening Br. at 11,18.

[42] *Id.* at 28.

judgment for that of the Council. To do so cannot be accomplished without contravening *Maddrey*'s instruction that the court not "weigh and evaluate the evidence."

### C. The Allegation of Procedural Defect is Outside the Record

Middlecap asserts that the Council members "prejudged" their votes before the second vote on remand and that they were "coached" on what to say in explaining their reasons and were reading from prepared scripts.[43]

These allegations are made by counsel in Middlecap's brief but are unsupported by any specific evidence. Even if Council members read from scripts, the parties were gathered because this Court ruled that their previous vote "fail[ed] to articulate a record of reasons sufficient for judicial review."[44] It is not shocking to imagine that some of them may have prepared notes to try to make a more thorough record this time. That does not prove they had "prejudged" their conclusions. Perhaps it only shows that if they were going to come up with the same conclusion, they wanted to articulate it better for later judicial review.

---

[43] Pl.'s Opening Br. at 37-38.
[44] *Middlecap Assocs., LLC v. Town of Middletown*, 2024 WL 3385825, at *5 (Del. Super. July 11, 2024).

13

In any event, all of this is outside the record in this review. The Court cannot take testimony or discovery, and the record - as far as the Court understands "the record" on certiorari review - does not support the allegation.

### D. The Allegation of Disparate Treatment Is Not Reviewable

Middlecap argues that the Town Council granted conditional approval to at least three garden apartments in zone C-3 in the past and its failure to grant Middlecap's permit constitutes disparate treatment.[45] Middlecap calls the previous approvals "decisional precedents."[46]

There is little room for *stare decisis* in conditional use permitting. The conditional use permits granted by the Town Council for garden apartments in C-3 zones were in various locations throughout the town. Granting them in some locations does not bind the Town Council to granting them everywhere. If Middlecap's argument was correct, the Town would be powerless to prevent garden apartments from springing up all over its C-3 zones, even though that zone is intended for retail/office buildings.

More time and effort could be expended reviewing each of the conditional uses granted in the past to explore Middlecap's disparate impact claim. But given

---

[45] Pl.'s Opening Br. at 38.
[46] *Id.* at 39.

14

the constraints of certiorari relief, such wrongs would have to appear on the face of the record. They do not. Even with the expanded exhibits Middlecap inserted into its briefing, prior decisions of the Zoning and Planning Commission regarding other similarly situated properties are not identified. This claim cannot be reviewed.

## I. *Gibson* and Arbitrary & Capricious Review

### A. *Gibson v. Sussex*

In its briefing, Middlecap asks this Court to find that the Council's vote was "arbitrary, capricious, and otherwise contrary to the law."[47] This argument stems from a Chancery Court case that applied an "arbitrary and capricious" standard in a conditional use permit case from Sussex County. Because of Middlecap's insistence that arbitrary and capricious is the proper standard, we will examine the case of *Gibson v. Sussex County Council*[48] in detail.

The Gibsons were a Wilmington couple who purchased land on Lake Comegys in Sussex County.[49] The land was zoned M-3 – medium density residential. Because their plan was for three multi-family unit townhomes, they needed a conditional use permit from the County to proceed.[50]

---

[47] Pl.'s Opening Br. at 17.
[48] *Gibson v. Sussex Cnty. Council*, 877 A.2d 54 (Del. Ch. 2005).
[49] *Id.* at 56.
[50] *Id.*

The Gibsons first presented their plan to the Sussex County Planning and Zoning Commission, which gave its approval.[51] But as in Middletown, the Planning Commission's approval is only advisory, and the elected County Council has the final word on conditional use applications. When the Gibsons' application was presented to the Council, it was met with vocal public objections, not the least of which were from other homeowners on Lake Comegys. Council voted against the permit.[52] The Gibsons filed their lawsuit in the Court of Chancery. Discovery was taken and cross motions for summary judgment came before the Court.

In the Gibsons' case, the Zoning and Planning Commission approved of the permit and the County Council essentially vetoed that decision with a "no" vote. The Vice Chancellor held that the Zoning and Planning Commission's decision was supported by substantial evidence, and therefore the Council bore the burden of proving its decision was *not* arbitrary and capricious.[53]

From here, the Court took a deep dive into the record. The Council members voiced a total of eight different objections to the plan and the Court dutifully went through all eight, discounting and repudiating each of them, before holding that the Council's denial was arbitrary and capricious.[54]

---

[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.* at 68-79.

A salient feature of the *Gibson* opinion was the Court's belief that the Council had "bent to the wind in the room" and weighed too heavily the opinions of nearby homeowners that the Gibsons' project would interfere with their enjoyment of their own homes. "What is not acceptable is for Council to retain general rules that permit some residents . . . to burden the environment, roads, and water quality while reserving to itself the right to pick out those to whom the same privilege should be denied."[55] While not articulated in so many words, the specter of disparate treatment of the Gibsons looms large over the *Gibson* opinion.

Sitting as it did as a court of equity, the Vice Chancellor not only reversed the County Council's denial of a conditional use permit, but also disallowed further proceedings and directed that Council issue the permit.[56]

## B. The Applicability of Gibson

Middlecap urges the Court to follow *Gibson*, find that Middletown's vote was arbitrary and capricious, and grant it a conditional use permit.[57] The Court cannot agree that "arbitrary and capricious" is an appropriate framework for analysis in a certiorari case. *Gibson* calls on a long line of Chancery cases applying arbitrary and

---

[55] *Id.* at 78.
[56] *Id.* at 79-80.
[57] Pl.'s Opening Br. at 14.

capricious review to Chancery zoning decisions, so some historical context is necessary.

The arbitrary and capricious standard of review was developed by Chancery in the exercise of its exclusive jurisdiction over zoning disputes as actions that were "legislative in nature." One of the earliest articulations of the standard can be found in *McQuail v. Shell Oil,* where the Supreme Court said that "the judgment of the Levy Court *on zoning matters* is presumed to be reasonable and valid and beyond court interference unless shown to be arbitrary, unreasonable, or capricious. The burden of rebutting this presumption and establishing such arbitrariness is imposed on the plaintiffs in this action."[58]

Thus, arbitrary and capricious review became a remedy to be exercised by Chancery Court reviewing legislative zoning acts.[59] The important distinction then, as discussed thoroughly in *Delta Eta*, is whether the act for which review is sought is legislative or judicial in nature. *Delta Eta* distinguished between area-wide zoning and conditional use permits. When a zoning ordinance has provided for uses that

---

[58] *McQuail v. Shell Oil Co.*, 183 A.2d 572, 579 (1962) (emphasis added).

[59] *See Shellburne, Inc. v. Roberts*, 224 A.2d 250, 253 (1966) (stating that the proper judicial review of the Levy Court's legislative act of rezoning was arbitrary and capricious); *Willdel Realty, Inc. v. New Castle Cnty.*, 281 A.2d 612, 614 (Del. 1971) ("Zoning is a legislative action presumed to be valid unless clearly shown to be arbitrary and capricious because not reasonably related to the public health, safety, or welfare."); *Steen v. Cnty. Council of Sussex Cnty.*, 576 A.2d 642, 648 (Del. Ch. 1989) ("This Court's role in reviewing a zoning decision of the County Counsil is limited to a review of the record to ascertain . . . that the decision is supported by substantial evidence and that it is not arbitrary, capricious or an abuse of discretion.").

are permissible, but not guaranteed as a matter of right, the decision whether to permit the use is quasi-judicial, not legislative.[60] Because the decision is not legislative, resort to the arbitrary and capricious standard of review is inappropriate.

Shortly after *Delta Eta*, the Delaware Supreme Court decided *Citizens Against Solar Pollution v. Kent County*.[61] It held that a Levy Court's approval of a conditional use permit for a solar panel farm was a quasi-judicial act for which the adequate remedy at law, in accordance with "*Delta Eta*'s thorough analysis," was writ of certiorari review.[62]

Finally, resort to Chancery's arbitrary and capricious standard for reviewing legislative/zoning decisions is inconsistent with the limitations on the record for review in a certiorari case. To determine if Council's actions were "arbitrary and capricious" will always require an examination of all of the relevant evidence before the Council and an analysis of its stated reasons for acting. Indeed, *Gibson* serves as a good example of the depth of inquiry required.[63] Mindful of the Supreme Court's circumscription of the record for review, and the General Assembly's

---

[60] By contrast, if the zoning ordinance allows the municipal body to decide that the special use will be permitted in *all* zones indiscriminately, then it may effectively be a rezoning which is legislative. *See Delta Eta*, 2023 WL 2982180, at *13 (citing *Bay Colony Ltd. P'ship v. Cnty. Council* (*Bay Colony I*), 1984 WL 159382, at *3 (Del. Ch. Feb. 1, 1984); *Gibson v. Sussex Cnty. Council*, 877 A.2d 54, 65 (Del. Ch. 2005)).
[61] 339 A.3d 1229, 2025 WL 751102 (Del. 2025).
[62] *Id.* at *2.
[63] *Gibson v. Sussex Cnty. Council*, 877 A.2d 54, 67 (Del. Ch. 2005).

19

apparent wish that a "quasi-judicial" decision made by a legislative body should receive only limited review, the Court concludes that there is no room for an "arbitrary and capricious" standard of review for conditional use permit litigation in Superior Court.[64]

## CONCLUSION

For all the foregoing reasons, the decision of the Middletown Town Council is **AFFIRMED** and Middlecap's Complaint in certiorari must be **DISMISSED**.

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
Charles E. Butler, Resident Judge

---

[64] *Delta Eta* similarly recognized the limited nature of certiorari review, calling it "less rigorous" and "a more deferential standard of review that would otherwise be applied if it were properly seeking review by [Chancery] Court." *Delta Eta,* 2023 WL 2982180, at *15.